## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

KENNETH LUCAS,

      Plaintiff,

    v.                                 No. 12-CV-998 WJ/RHS

GILBERT SANCHEZ,

      Defendant.


## MEMORANDUM OPINION AND ORDER
## GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT


THIS MATTER comes before the Court upon Defendant's Motion for Summary Judgment on the Basis of Qualified Immunity, filed November 2, 2012 (**Doc. 17**).   Having reviewed the parties' briefs and applicable law, I find that Defendant's is well-taken and shall be granted.

### Background

This is a civil rights case which arose from an initial traffic stop.   The case was initially filed in the Thirteenth Judicial District Court for the State of New Mexico, County of Sandoval, and was removed to federal court on September 24, 2012.   According to the complaint (Doc. 1-2), on October 22, 2012, Plaintiff was driving on a public road in the County of Sandoval when he was stopped by Defendant Gilbert Sanchez, a deputy for the Sandoval County Sheriff's Department.  Defendant was driving a marked patrol car.  The complaint alleges that Defendant Sanchez initiated a traffic stop.   At the stop, Plaintiff exited his vehicle while talking on the telephone.  While speaking on the phone, Plaintiff turned his back on Defendant whereupon

Defendant deployed his taser and hit Plaintiff, claiming that Plaintiff refused to obey his commands.  The complaint alleges that Defendant placed Plaintiff on the ground, placed him in handcuffs and booked him into jail.  Plaintiff asserts in the complaint that he did not have a weapon in his possession and he did not refuse Defendant's verbal commands at any time.  He also asserts that he suffered extreme pain during and after the tasing and that the incident has exacerbated his pre-existing medical condition.  Plaintiff alleges various federal civil rights and state law claims.

## I.    Legal Standard

Defendant moves for summary judgment based on qualified immunity, which then requires that the Plaintiff bear a "heavy two-part burden of demonstrating that (1) the defendant violated a constitutional right and (2) the constitutional right was clearly established at the time of the alleged conduct." *Reeves v. Churchich*, 484 F.3d 1244, 1250 (10th Cir.2007).  If a plaintiff meets this burden, the defendant must then satisfy the usual summary judgment standard of showing that no material facts are in dispute and that he or she is entitled to judgment as a matter of law.  *Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1312 (10th Cir.2002).   In ruling on a motion for summary judgment, the district court does not make credibility determinations; rather, the "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

Although the Court must view the evidence and draw all inferences in the light most favorable to the non-movant (here, the Plaintiff), that party "must identify sufficient evidence which would require submission of the case to a jury." *Langley v. Adams Cty., Colo.*, 987 F.2d 1473 (10th Cir. 1993);  *Elephant Butte Irr. Dist. of New Mexico v. U.S. Dept. of Interior*, 538

F.3d 1299, 1305 (10th Cir. 2008) (Fed.R.Civ.P.56 requires that party opposing motion for summary judgment must set out specific facts showing a genuine issue for trial; party does not so respond, summary judgment should, if appropriate, be entered against that party).

Also, this Court's local rules require that a response to summary judgment "must contain a concise statement of the material facts cited by the movant as to which the non-movant contends a genuine issue does exist." D.N.M.LRCiv. 56.1(b).   In addition, "[e]ach fact in dispute must be numbered, must refer with particularity to those portions of the record upon which the non-movant relies, and must state the number of the movant's fact that is disputed." *Id*. Significantly, "[a]ll material facts set forth in the [movant's] Memorandum will be deemed undisputed unless specifically controverted."  *Id*.

In this case, Plaintiff has not done his part to show that specific material facts are in dispute.   Plaintiff both  fails to controvert any of Defendant Sanchez' material facts and fails to set forth his own specific facts illustrating a genuine issue for trial on dispositive matters. Instead, Plaintiff submits an affidavit setting out the facts which largely mirror the allegations in the complaint.   While a party opposing summary judgment may rely on an affidavit attached to the response, it is still the non-movant's burden to present a concise statement of the material facts which dispute the movant's presentation of facts.  Plaintiff's strategy is to simply present his affidavit and have it speak for itself.  This is insufficient to create material disputes of fact in response to Defendant's summary judgment motion.  *Cross v. Home Depot,* 390 F.3d 1283, 1290 (10th Cir. 2004) ("it is the responding party's burden [at summary judgment] to ensure that the factual dispute is portrayed with particularity, without. . . depending on the trial court to conduct its own search of the record." 390 F.3d 1283, 1290 (10th Cir.2004) (quoting *Downes v. Beach*, 587 F.2d 469, 472 (10th Cir.1978)); *see also Coleman v. Blue Cross Blue Shield of Kansas, Inc.*,

287 Fed.Appx. 631, 634-35, 2008 WL 2662595, 3 (10th Cir. 2008) (summary judgment granted to defendant where plaintiff failed to create genuine issue of material fact by relying on affidavit, but failed to specifically cite a particular part of the affidavit as a source of plaintiff's contrary factual allegation).

As a result of Plaintiff's failure to comply with Local Rule 56.1(b), it is difficult, if not impossible, to determine which of Defendant Sanchez' material facts are disputed by Plaintiff. Thus, the Court has only to consider whether Defendant is entitled to summary judgment as a matter of law, based on Defendant's presentation of undisputed facts.  *See Reed v. Bennett*, 312 F.3d 1190, 1194-95 (10th Cir. 2002).

## II.      UNDISPUTED FACTS

The following facts are from Defendant's Statement of Undisputed Facts (Doc. 17). Their inclusion here signifies that Defendant has offered support for these facts, in the form of Defendant Sanchez' affidavit, the police report, the incident videotape (Exhibit A, lodged separately with the Court) and the Videotape of EMS evaluation from Defendant Sanchez' lapel camera ("EMS Videotape" attached as Exhibit D, and also lodged separately with the Court).

A.      Events Prior to Stop

Defendant Sanchez currently serves as a Deputy Sheriff with the Sandoval County Sheriff's Department ("SCSD") and was serving also at the time of the underlying incident.   On October 22, 2010, the date of the incident, Defendant Sanchez was dressed in a full police uniform showing his badge of office and shoulder patches indicating he was an SCSD Deputy. On that morning, Defendant Sanchez was on routine patrol in his police vehicle, traveling northbound on Interstate 25.  He observed a grey Nissan passenger vehicle some distance ahead of him, traveling in an unsafe manner and decided to attempt a traffic stop of the Nissan.

4

Defendant needed to enter the left lane of traffic in order to pursue the Nissan because an 18-wheel truck was directly in front of him.

Just before entering the left traffic lane, Defendant observed a red Ford pickup truck (later determined to be the car driven by Plaintiff) move from the right lane into the left lane, directly in front of Defendant and blocking Defendant's pursuit of the Nissan.  Defendant Sanchez repeatedly motioned with his left hand for the driver of the red pickup truck to move over into the right lane of traffic, so that he could continue his pursuit of the Nissan.  At the time that Defendant Sanchez motioned for the driver of the pickup truck to move over, the right lane had sufficient space for the pickup, but it did not provide a suitable avenue for pursuit, as the 18-wheel truck that had been in front of Defendant Sanchez was still in that lane.

Defendant Sanchez was able to observe the driver of the red pickup through the driver's side mirror, and he made eye contact with the driver as he continued motioning for the driver to move  over into the right lane.   Defendant Sanchez observed that the driver of the red pickup truck appeared to be beating on his steering wheel and showing signs of extreme agitation, but he did not observe the driver saying any particular words.  The driver of the red pickup continued to refuse to move over, and then abruptly hit his brakes, slowing down to approximately 40 miles per hour and almost causing a collision between Defendant Sanchez' patrol unit and the red pickup.  The refusal to follow orders to move over and the sudden braking that almost caused an accident caused Defendant Sanchez to initiate a traffic stop on the red pickup for reckless driving.

B.    Events Surrounding the Stop

Defendant contends that his general concerns which accompany a traffic stop were heightened not only by the erratic behavior that he had observed from the driver of the red

5

pickup, but by his concern that the driver of the red pickup may have been working in connection with the driver of the Nissan to create a distraction and to prevent the Nissan's apprehension. This already-heightened level of concern was increased when, immediately upon coming to a stop, Plaintiff exited the red pickup truck and began walking back toward the patrol unit. At that time, in over eight years as a law enforcement officer, having conducted over one thousand traffic stops, Defendant Sanchez had never witnessed a driver exit his or her vehicle and approach his patrol vehicle without being told to do so. To this day, this incident is the only time that Defendant Sanchez has witnessed a driver exit his or her vehicle and approach his patrol vehicle without being told to do so. Despite receiving a loud verbal command to return to his vehicle and close the door, Plaintiff continued to close the distance with Defendant Sanchez. In response to Plaintiff's failure to heed to order to return to his vehicle, Defendant Sanchez opened the door to his patrol unit, took a protective position behind the door, drew his taser, and issued two more loud verbal commands for Plaintiff to return to his vehicle and close the door. Defendant Sanchez held his drawn his taser in a manner such that it would have been visible to Plaintiff.

Plaintiff did not obey Defendant Sanchez' commands to return to his vehicle, but instead continued closing the distance with Defendant Sanchez, heading toward the passenger side of his patrol vehicle. The fact that Plaintiff was heading toward the passenger side of the patrol vehicle caused Defendant Sanchez to fear for his safety because he knew that if Plaintiff got to the passenger side of the patrol vehicle, he could use the vehicle as a shield to hide behind. In addition, by walking over to the passenger side of his vehicle, Plaintiff was forcing Defendant Sanchez to split his gaze between Plaintiff and Plaintiff's vehicle, and Defendant Sanchez had no way of knowing if Plaintiff had been the sole occupant of the red pickup truck, or if he was

6

acting to create a distraction to enable another occupant to fire a weapon.   In fact, as Plaintiff

was approaching Defendant Sanchez, Sanchez observed movement in the cab of the red pickup

truck out of the corner of his eye.   Defendant Sanchez later found out that the movement had

been caused by Plaintiff's dog, but at the time he did not know what had caused the movement.

As Plaintiff was closing the distance with him, Defendant Sanchez was trapped in the

position he was occupying and could not retreat because heavy highway traffic was passing just

behind him.  As Plaintiff approached Defendant Sanchez, Sanchez did not know Plaintiff's

training, his objective in approaching the patrol unit, or his mental state.   As Plaintiff

approached Defendant Sanchez, Sanchez also did not know if Plaintiff was armed.  Because

Plaintiff's shirt was untucked and baggy, Defendant Sanchez could not see if Plaintiff had any

weapon in the waistband of his pants.  According to the incident report, Plaintiff was armed with

a knife on his person, as well as a handgun and Winchester rifle in his pickup truck.

C.      Events Surrounding Use of Taser

Defendant Sanchez made the decision to fire his taser at Plaintiff in an attempt to

immobilize him so that Defendant Sanchez could get control of the situation before Plaintiff got

any closer.   The taser did not physically affect Plaintiff, because the taser's hooks lodged in his

shirt instead of penetrating or making contact with his skin.   However, use of the taser distracted

Plaintiff enough that Defendant Sanchez was able to place him to the ground and handcuff him.

Plaintiff was evaluated at the scene of the incident by Emergency Medical Service

("EMS") personnel from the Sandoval County Fire Department.  At no point during this

evaluation did Plaintiff indicate to EMS personnel that he had received a shock from the taser,

that the taser had caused him an injury, or that he had suffered any other injury.  Plaintiff was

evaluated at the scene of the incident by Emergency Medical Service ("EMS") personnel from

the Sandoval County Fire Department. At no point during this evaluation did Plaintiff indicate to EMS personnel that he had received a shock from the taser, that the taser had caused him an injury, or that he had suffered any other injury.  Plaintiff repeatedly refused medical treatment.

Following the incident, Defendant Sanchez filed a Criminal Complaint against Plaintiff and an accompanying Statement of Probable Cause in the Magistrate Court in Sandoval County in New Mexico's Thirteenth Judicial District, charging Plaintiff with the crimes of reckless driving in violation of N.M.S.A. § 66-8-113 and resisting, evading, or obstructing an officer in violation of  N.M.S.A. § 30-22-1.   On May 3, 2011, a pre-trial conference was scheduled before Judge Richard L. Zanotti in Plaintiff's criminal case. Defendant Sanchez attended the conference and was prepared to proceed as a witness in favor of the prosecution.  That day, an attorney from the 13th Judicial District Attorney's Office, Daniel Gallegos, entered his appearance to prosecute the case.   Pursuant to a motion from Plaintiff's counsel, the Court dismissed the case without prejudice for failure of the District Attorney to prosecute in a timely manner.

## DISCUSSION

The complaint asserts the following: First Amendment Retaliation (Count I); Fourth Amendment Unlawful Search and Seizure (Count II); Excessive Force (Count IV); Malicious Prosecution (Count V); and a state law claim of battery (Count VI). [1]   The Court includes some references to Plaintiff's Affidavit (Doc. 23-1) in considering Plaintiff's claims, although the Court is not required to do so given that Plaintiff has not complied with Rule 56 and this Court's local rules.  However, in such situations, a court may use its discretion to do so.  *See Amundsen v. Jones,* 533 F.3d 1192, 1197 (10th Cir. 2008) (court considered plaintiff's version of facts although plaintiff did not comply with local rule).

## I.      FOURTH AMENDMENT STOP, SEARCH AND ARREST

[1]   The complaint skips a Count III.

In Count II, Plaintiff contends that Defendant Sanchez violated his Fourth Amendment rights because he did not have reasonable suspicion to detain him, and he lacked reasonable suspicion or probable cause to search him and arrest him.

A.      Initial Stop

The law surrounding legally valid stops and seizures was clearly established at the time of the underlying incident.  In analyzing the validity of a traffic stop against a claim that the stop violated the Fourth Amendment, the Tenth Circuit applies the "reasonable suspicion" standard for investigative detentions first set forth in *Terry v. Ohio*, 392 U.S. 1, 20-21; *U.S. v. Winder,* 557 F.3d 1129, 1133 (10th Cir. 2009) (citing *United States v. Botero-Ospina*, 71 F.3d 783, 786 (10th Cir. 1995) (en banc)). A traffic stop is "justified at its inception" if an officer has: (1) probable cause to believe that the driver has committed a traffic violation; or (2) "a reasonable articulable suspicion" that the driver has violated any of the traffic or equipment regulations of the jurisdiction. *United States v. Martinez*, 512 F.3d 1268, 1272 (10th Cir. 2008). In order for reasonable suspicion to exist, the officer must simply possess "some minimal level of objective justification" for making the stop; he or she "need not rule out the possibility of innocent conduct."  *United States v. Vercher*, 358 F.3d 1257, 1261 (10th Cir. 2004). Thus, even evidence that falls "considerably short" of a preponderance satisfies this standard.  *U.S. v. Arvizu,* 534 U.S. 266, 274 (2002).  In conducting an analysis of the legality of a traffic stop, the Court should "consider the reasonableness of an officer's actions using an 'objective standard' that takes the 'totality of the circumstances' and the 'information available' to the officer into account." *Winder*, 557 F.3d at 1124 (quoting *United States v. Sanchez*, 519 F.3d 1208, 1213 (10th Cir. 2008)). The Court should ask "whether 'the facts available' to the detaining officer, at the time, warranted an officer of 'reasonable caution' in believing 'the action taken was appropriate.'" *Id*.

(quoting *Terry*, 392 U.S. at 21-22). In "look[ing] at the 'totality of the circumstances' of each case to see whether the detaining officer has a 'particularized and objective basis' for suspecting legal wrongdoing," the Court should "allow[] officers to draw on their own experience and specialized training to make inferences from and deductions about the  cumulative information available to them that 'might well elude an untrained person.'" *Arvizu*, 34 U.S. at 273 (internal citations omitted).  Observed traffic violations necessarily "afford the quantum of individualized suspicion necessary to ensure that police discretion is sufficiently constrained."  *Wren v. United States*, 517 U.S. 806, 817–18 (1996).

In this case, even though the law was clearly established, Defendants prevail at summary judgment because Plaintiff presents no material dispute of fact which would suggest to a reasonable fact finder that he was stopped, detained and arrested in violation of his Fourth Amendment rights.  Plaintiff's affidavit (Doc. 23-1) does not present any fact which rebuts or otherwise disputes the events which occurred.  Plaintiff does not dispute that he observed a marked police vehicle traveling close behind him, or that the individual in the police vehicle motioned him to move over to the next lane.  There are no facts disputing Defendant Sanchez' statements that he made eye contact with Plaintiff and continued motioning for him to move over into the right lane and no facts disputing Defendant Sanchez' observations that the driver of the car appeared to be beating on his steering wheel and showing signs of extreme agitation.

Plaintiff states in his affidavit that he tapped his brakes to disengage and tried to change lanes, and then saw the emergency lights on the police vehicles.  These statements are consistent with Defendant Sanchez' observations that, instead of complying with Defendant's orders to clear the lane, Plaintiff was braking his car and slowing down while Plaintiff was traveling in front of Defendant.  Plaintiff finally pulled over when Defendant turned on his emergency lights.

This is not inconsistent with Defendant's observations.  The Incident Videotape (Ex. A) begins at the point where Defendant Sanchez exited his vehicle in response to seeing Plaintiff exit his vehicle and approach the police vehicle.  Defendant repeatedly yelled at Plaintiff to "get back in your car and close the door."   Plaintiff continued to approach the police vehicle moving to the road shoulder while using his cell phone, and Defendant deployed his taser at this point.

Plaintiff states in his affidavit that he did not hear Defendant's commands.  When Defendant asked him why he did not get back in his car when told to do so, Plaintiff stated that he did not see or hear anything.  Incident Videotape at 1:20 – 1:35.   Plaintiff also claimed that he thought Defendant was "an imposter" and was calling 911 so there would be "a record" and "a real police officer" at the scene.   Deft's Ex. H.   He told Defendant that he exited his vehicle and approached the police vehicle in order to report the number of the patrol unit to 911.    None of these statements create an issue of fact.  The Incident Videotape (Ex. A) "tells all."  The incident occurred in bright daylight.   Defendant was in a marked police unit, and Plaintiff does not dispute the fact that Defendant Sanchez was dressed in a full police uniform indicating he was an SCSD Deputy.  While Plaintiff may be hard-of-hearing, and may not have distinctly heard Defendant's commands, he would have seen Defendant's taser ready to deploy.  Instead of stopping and even attempting to understand the commands, Plaintiff continued to walk toward the side of the police vehicle, still on his cell phone.   After tasing Plaintiff, the videotape shows Defendant Sanchez subdue Plaintiff, taking him to the ground and handcuffing him.  Plaintiff told Defendant Sanchez that it made no sense to pull him over.   Incident Videotape at 11:20.

Regardless of what Plaintiff may have thought or believed, Defendant had reasonable suspicion to stop Plaintiff.   At the very least, a reasonable officer could have believed that reasonable suspicion existed.  *See Vondrak v. City of Las Cruces,* 535 F.3d 1198, 1207 (10th Cir.

2008 (quoting *Cortez v. McCauley,* 478 F.3d 1108, 1123 (10th Cir. 2007 (en banc) ("arguable

reasonable suspicion" as a basis for qualified immunity).  A Fourth Amendment inquiry does not

take into account a plaintiff's subjective beliefs, but rather asks whether, from an objective

viewpoint and taking all factors into consideration, the officer acted reasonably.  *Swanson v.

Town of Mountain View, Colo.,* 577 F.3d 1196, 1203 (10th Cir. 2009) (if reasonable suspicion

exists, our law provides that the subjective motivations of the officer are irrelevant).   Based on

the undisputed facts in this case, Plaintiff's failure to move over when ordered to do so and the

unsafe conditions created by his braking in the left lane created the basis for the initial traffic

stop.  *See* Police Report, attached as Exhibit C at 2 (stating that, when he went to conduct a

traffic stop of another vehicle, his progress was impeded by Plaintiff's vehicle, that Plaintiff

refused to move over despite motions ordering him to do so, and that Plaintiff abruptly braked,

slowing down significantly and nearly causing an accident).   Plaintiff's own allegations

regarding what occurred prior to the initial stop are consistent with Defendants' statements and

other evidence presented by Defendant.  The Court finds this evidence sufficient to grant

summary judgment to Defendant on the issue of whether Defendant Sanchez had an objectively

reasonable suspicion to justify his initial stop of Plaintiff.

B.      Search and Arrest

        If an officer has probable cause to believe that a person "has committed even a very

minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest

the offender." *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001); *Buck v. City of

Albuquerque*, 549 F.3d 1269, 1281 (10th Cir. 2008) (when warrantless arrest is the subject of a

§1983 action, in order to succeed, a plaintiff must prove that the officer lacked probable cause.

Based on the undisputed facts in this case—including the facts based on Plaintiff's own statements in his affidavit—probable cause existed to arrest Plaintiff.

   *1.     Arrest*

   The facts are evident from the videotape.  Immediately upon stopping after being pulled over by Defendant Sanchez, Plaintiff exited his truck and began walking back toward Defendant's patrol unit.  Defendant opened the door of his patrol unit, stayed back toward his patrol unit (characterized by Defendant as a "protective position") and loudly and repeatedly gave Plaintiff verbal commands to "get back in the vehicle and close the door." [2]

   Plaintiff did not comply with these orders, but continued walking toward the patrol car. The videotape indicates that Plaintiff was using his cell phone as he was walking toward the patrol unit, but was in a position where Defendant Sanchez was visible to him.  As Plaintiff continued his approach to the patrol unit, Defendant drew his taser, again commanding Plaintiff to "get back in the car, close the door, do it now"!  Incident Videotape at :05-:08.   As Plaintiff continued approaching toward the passenger side of the patrol unit, Defendant fired his taser in an attempt to stop his progress.  The taser caught in Plaintiff's shirt, which was enough to halt Plaintiff but not injure him.   Defendant arrested Plaintiff for resisting, evading, or obstructing an officer, pursuant to NMSA 1978, § 30-22-1.  Section 30-22-1 makes it a crime, inter alia, to "resist[] or abus[e] any judge, magistrate or peace officer in the lawful discharge of his duties." NMSA 1978, § 30-22-1(D).

---

[2]   The complaint alleges that "at no time did Plaintiff refuse Defendant's verbal commands."  Compl., ¶ 19.  This statement is overwhelmingly refuted not only by the clear footage of the videotape, but by Plaintiff's own affidavit statements that he "did not hear the officer say anything."  Doc. 23-1, ¶ 8.  Thus, the Court need not consider Plaintiff's unsupported asserted that he complied with Defendant's verbal commands.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 255 (1986) (inquiry on summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a [fact finder] or whether it is so one-sided that one party must prevail as a matter of law"); *Scott v. Harris*, 127 S.Ct. 1769, 1777 (2007) (when opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment).

As with the analysis for reasonable suspicion, Plaintiff's subjective beliefs are not relevant.   *See  Whren,* 517 U.S. 806 (subjective intentions play no role in ordinary, probable-cause Fourth Amendment Analysis).   For this reason, it does not matter whether Plaintiff in fact heard Defendant's commands, or whether he believed Defendant was an imposter.[3]   What matters is how the situation appeared to the law enforcement officer, and whether that officer's conduct was objectively reasonable.   Given the above undisputed facts regarding Plaintiff's actions, the Court finds that Plaintiff's conduct constituted a basis for arrest with probable cause. Further, even if there is any "wiggle room" for the existence of probable cause, the Court finds that Defendant is entitled to qualified immunity because a reasonable officer could have believed that probable cause existed to make the arrest.   *See Robertson v. Las Animas Cty. Sheriff's Dep't,* 500 F.3d 1185, 1191 (10th Cir. 2007) (in the context of a claim made under § 1983 that a warrantless arrest violated the Fourth Amendment, the arresting officer is entitled to qualified immunity if a reasonable officer could have believed that probable cause existed to make the arrest).

    2.    *Search*

Defendant's search of Plaintiff was also justified based on the undisputed facts.   After Plaintiff was arrest, a pat-down search for weapons is allowed under the Fourth Amendment. *U.S. v. Robinson,* 414 U.S. 218, 235 (1973).   The pat-down revealed a "sog pocket knife."  Ex. C.  Plaintiff asserts in the complaint that at no time did he have a weapon in his possession. However, this assertion is blatantly contradicted by video evidence to the contrary.   Incident Videotape at 4:00-4:30.  The police report also lists not only a pocket knife, but also a Taurus revolver and a Winchester rifle with ammunition.  Ex. C.

---

[3]  Plaintiff's contention that he believed Defendant Sanchez was an imposter strains credulity, given the undisputed facts that Defendant was in a marked patrol unit, it was broad daylight, and Defendant was clothed in full regalia as an SCSD Deputy.

Even without grounds for arrest, a brief pat-down search of Plaintiff for weapons was objectively reasonable.  The surrounding circumstances would have alerted a reasonable officer for the need to conduct a search.  Defendant had already witnessed aberrant behavior prior to the traffic stop (beating on his steering wheel and showing signs of agitation) and following the stop in refusing to comply with verbal commands.  The videotape shows Plaintiff not only continuing to approach toward the patrol unit, but not hesitating or breaking his stride.  Defendant Sanchez could not know the reasons for Plaintiff's behavior.  Plaintiff's continued approach to the passenger side of the patrol unit could reasonably be considered potentially threatening. Plaintiff, if armed, could use the patrol unit as a shield to hide behind, leaving Defendant boxed in between Plaintiff and the highway traffic.  Defendant did not know if Plaintiff was armed, and, because Plaintiff's shirt was untucked and baggy (a fact borne out by video evidence), he could not see Plaintiff's  waistband to determine whether he had a weapon hidden there.  Further, it was not clear whether Plaintiff was the sole occupant of the red pickup truck until a later check revealed that the movement inside the truck was Plaintiff's dog.   Under these circumstances, it was objectively reasonable for Defendant Sanchez to feel physically threatened and to suspect that Plaintiff could be armed and potentially dangerous.

## II.    FIRST AMENDMENT CLAIM

Plaintiff alleges in his complaint that Defendant prevented him from engaging in constitutionally protected speech and retaliated against him for his exercise of free speech. Compl., ¶ 26.

This claim is fraught with several problems.  First, Plaintiff evidently believes that "mouthing words at a passing police car" constitutes constitutionally protected speech, without even identifying the "speech."  Thus, Plaintiff's claim is based on conclusory statements and

Defendant would be entitled to summary judgment on that basis alone.  Second, the basis for

Plaintiff's allegation is suspect and factually not feasible or possible, since it is undisputed that

Defendant's patrol unit was *behind* Plaintiff's red pickup truck, and thus was not a "passing

police car."

Third, in a qualified immunity context, a plaintiff has the burden of asserting facts which

allege a constitutional claim.[4]  As Defendant notes, even an attempt to amend the complaint

would be futile because the claim would be precluded by the reasoning set forth in *Reichle v.*

*Howards,* 132 S.Ct. 2088 (2012).  In *Reichle,* plaintiff alleged that Secret Service agents violated

his First Amendment rights by retaliating against him for engaging in constitutionally protected

speech.  The United States Supreme Court held that a First Amendment right to be free from

retaliatory arrest for speech, even if the arrest was otherwise supported by probable cause, was

not clearly established at time of plaintiff's arrest in 2006.   Nor can *Reichle* be used as support

for finding that Plaintiff has asserted a viable constitutional right.  The Supreme Court also stated

in *Reichle* that "[t]his Court has never recognized a First Amendment right to be free from a

retaliatory arrest that is supported by probably cause."  *Id.*at 2093 (citation omitted).  The fact

that *Reichle* was decided in 2012 indicates that as of 2012, the Supreme Court has never

recognized such a right.[5]

The lack of clearly established law on this issue means that even if Plaintiff could

somehow establish that his initial detention and his arrest were motivated by his protected

speech, because Defendant Sanchez has shown there was reasonable suspicion justifying the

---

[4]   Under recent United State Supreme Court precedent, courts now have discretion to determine "which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand," *Pearson v. Callahan*, 129 S.Ct. 808, 818 (2009).
[5]   For a right to be clearly established there must be Tenth Circuit or Supreme Court precedent close enough on point to make the unlawfulness of the officer's actions apparent.  *Weise v. Casper*, 593 F.3d 1163, 1167 (10th Cir.2010). In the alternative, "the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains."  *Id*. (quotations omitted).   Plaintiff has not offered any such examples in this case to suggest that the law is clearly established on this issue.

initial stop and probable cause for arresting Plaintiff, he is still entitled to qualified immunity on the First Amendment retaliatory arrest claim.

## III.    EXCESSIVE FORCE CLAIM

In Count IV of the Complaint, Plaintiff alleges that Defendant Sanchez "used physical force in seizing and detaining Plaintiff," and that "[e]ven if [Deputy] Sanchez had reason to arrest Plaintiff, his use of the Taser under such circumstances was objectively unreasonable." Complaint at 4-5 ¶¶ 37-38.

In order to prevail on an excessive force claim, a plaintiff must demonstrate that, not only was the use of force objectively unreasonable under the totality of the circumstances of the particular case, but also that the amount of force used was "sufficiently egregious to be of constitutional dimensions." *Martin v. Bd. of County Comm'rs*, 909 F.2d 402, 407 (10th Cir. 1990) (per curiam).  The extent of the injury inflicted by any use of force is additionally relevant in evaluating an excessive force claim.  The ultimate issue is whether the officer's use of force was objectively reasonable in light of the surrounding facts and circumstances as seen from the perspective of a reasonable officer at the scene.  *Marquez v. City of Albuquerque*, 399 F.3d 1216, 1220 (10th Cir. 2005).   In analyzing  whether the use of force was objectively reasonable, a court should "pay careful attention to the facts and circumstances of the particular case." *Estate of Larsen ex rel. Sturdivan v. Murr,* 511 F. 3d 1255, 1260 (10th Cir. 2008).   This analysis must take into account the circumstances faced by the officer at the time that he acted "rather than with the 20/20 vision of hindsight," and must "embody allowance for the fact that police officers are often forced to make split-second judgments–in circumstances that are tense, uncertain, and rapidly evolving–about the amount of force that is necessary in a particular situation." *Graham v. Connor*, 490 U.S. 386, 396-97 (1989).   In conducting its analysis, a court

should take into account several factors, including the severity of the alleged crime spurring the investigation or arrest, the degree of threat that the suspect appeared to pose to the officer, and the cooperation, or lack thereof, by the suspect.   *See Thompson v. Salt Lake Cty*., 584 F.3d 1304, 1313 (10th Cir. 2009) (citing *Graham*, 490 U.S. at 397).

The Court finds that, in the circumstances faced by Defendant Sanchez, the force used was objectively reasonable.  The Incident Videotape shows that, twice after handcuffing Plaintiff, Defendant Sanchez readjusted them to loosen them when Plaintiff complained they were too tight.   The use of the taser on Plaintiff also can hardly be viewed as excessive force given Plaintiff's comments after Defendant deployed the taser.   The videotape evidence demonstrates that, rather than being immobilized by an electrical current or crying out in agony, Plaintiff merely stopped advancing when hit by the taser, turns to the side, and angrily asks "what the hell is the matter with you?" Incident Videotape at 0:09-0:12.  Several minutes after being tased, as Defendant Sanchez sitting Plaintiff up from the ground and  beginning to detach the taser hooks from his shirt, Plaintiff asks (referring to the taser) "was that supposed to disable me?"  *Id.* at 3:10-3:18.  When Defendant Sanchez confirmed that the idea was to disable him, Plaintiff commented "you should have done it stronger." *Id*. at 3:18-3:21.

Clearly established law requires that Defendant's use of the taser be considered in the particular circumstances of that incident.   The facts concerning Plaintiff's conduct and placement of the vehicles prior to and during the stop are undisputed.  It was not unreasonable for Defendant Sanchez, based on his experience and the circumstances he faced at the time, to believe that Plaintiff's conduct could be consistent with that of a decoy to distract the patrol unit from pursuing a lead vehicle carrying contraband.  In his eight years as a police officer, and having conducted over one thousand traffic stops, he had never witnessed someone whose

vehicle he had stopped exit their vehicle without authorization—let alone approach his patrol

unit.  As the video evidence bears out, Defendant took a defensive position behind the door of

his patrol unit.  The direction Plaintiff took in his approach to the patrol unit could have indicated

that Plaintiff intended to use the vehicle as a shield to hide behind.   During this time, Defendant

did not know if Plaintiff was armed.   The sum of all these facts could easily lead a reasonable

police officer to be concerned about his safety, and thus the use of Defendant's taser when

Plaintiff did not comply with Defendant's repeated commands to stop was reasonable as a matter

of law.

The EMS Videotape (Ex. D) is largely uneventful, depicting EMS personnel conducting a

physical and mental status examination.  Plaintiff's conversation with EMS personnel was

benign, and at times even jocular ("This won't make America's Most Wanted, will it"? at 10:40-

10:42).   At no point during this evaluation did he indicate to EMS personnel that he had

received a shock from the taser, that the taser had caused him an injury, or that he had suffered

any other injury.  Plaintiff reported no injuries and refused to be taken to a hospital for further

treatment, signing a waiver form to that effect.   EMS Videotape at 9:50-9:52.   This clear,

overwhelming visual evidence completely refutes Plaintiff's unsupported allegations in his

complaint that he suffered extreme pain.   Compl., ¶ 21.

Towards the end of the evaluation, Defendant Sanchez (who was recording the evaluation

on his belt tape) recapitulated for Plaintiff the importance of staying inside his vehicle when he

stopped by a police officer.  Defendant noted that even if Plaintiff believes the officer is an

imposter, exiting his vehicle is dangerous and Plaintiff should stay inside his vehicle and call

911.  EMS Videotape at 11:20-11:35.[6]  Plaintiff's last few statements in the EMS vehicle to

---

[6]  Even before viewing the EMS Videotape, the Court also wondered why, if Plaintiff was truly concerned that the
officer who motioned him over and stopped his car was an imposter, Plaintiff would leave the safety of his vehicle

Defendant certainly do not advance his claim of excessive force.  In fact, these statements

acknowledge that Defendant's actions were reasonable and based on a misunderstanding.

- "Both of us were acting under what we thought was the right thing to do." EMS
  Videotape, Ex. D at 12:25

- acknowledging that "the guy [referring to Defendant] did the right thing" despite feeling
  the incident was "strange."   Ex. D at 13:00-13:05

- Plaintiff stating that the incident was a "lesson I will remember."  Ex. D at 13:25.

Accordingly, based on the foregoing discussion, Defendant is entitled to summary judgment

on the claim of excessive force.

## IV.    MALICIOUS PROSECUTION

In Count V of the Complaint, Plaintiff asserts that Defendant Sanchez maliciously

prosecuted him.  The common law elements of malicious prosecution are the "starting point" for

this Court's analysis of a § 1983 malicious prosecution claim.  *Pierce v. Gilchrist*, 359 F.3d

1279, 1285-86 (10th Cir. 2004).  But "the ultimate question" in such a case "is whether plaintiff

has proven the deprivation of a constitutional right." *Novitsky v. City of Aurora*, 491 F.3d 1244,

1257-58 (10th Cir. 2007) (citing *Taylor v. Meacham*, 82 F.3d 1556, 1561 (10th Cir. 1996)).

Under Tenth Circuit law, a § 1983 malicious prosecution claim includes the following elements:

(1) the defendant caused the plaintiff's continued confinement or  prosecution; (2) the original

action terminated in favor of the plaintiff; (3) no probable cause supported the original arrest,

continued confinement, or prosecution; (4) the defendant acted with malice; and (5) the plaintiff

sustained damages.  *Wilkins v DeReyes,* 528 F.3d 790, 799 (10th Cir. 2008); *Novitsky,* 491 F.3d

---

to call 911and then advance toward the patrol unit—closer to where the purported imposter was standing.   This
erratic conduct only adds support to the reasonableness of Defendant's concern for his own safety.

at 1258; *Pierce,* 359 F.3d at 1279.   This law was clearly established at the time of the underlying incident.

Because the Court has determined that probable cause existed for Plaintiff's arrest, Plaintiff's malicious prosecution claim must fail.   Further, as Defendant notes, while Plaintiff's criminal case was dismissed on procedural grounds, it did not terminate in his favor for purposes of this analysis. *Dobiecki v. Palacios*, 829 F.Supp. 229, 235 (N.D.Ill. 1993) (cited with approval by *Wilkins*, 528 F.3d at 804); *Mendoza v. K-Mart, Inc*., 587 F.2d 1052, 1057 (10th Cir. 1978) (the Tenth Circuit has  interpreted New Mexico law to allow "recovery for malicious prosecution only if the criminal prosecution against the plaintiff is disposed of in a way which indicates his innocence.").

## V.    BATTERY

Count VI of the Complaint alleges that Defendant Sanchez "physically attacked [him] with a Taser," and that such actions "were intentional and without legal justification."  Compl., ¶¶ 48-50.

In making an arrest, an officer is "privileged by statute to use only that force which is necessary to restrain the arrested person."  *State v. Kraul*, 563 P.2d 108, 112 (N.M.Ct.App.) (quotation and citation omitted), *cert. denied*, 567 P.2d 486 (N.M.1977);  *Mead v. O'Connor,* 66 N.M. 170 (1959).   The Court's findings herein that Defendant Sanchez used reasonable force under the circumstances precludes Plaintiff's state law battery claim, and Defendant is entitled to summary judgment on this claim as well.  *See Reynaga v. Cty. of Bernalillo,* 1995 WL 503973, *2, (10th Cir. 1995) (affirming district court's instruction that the battery claim could prevail only if plaintiff proved that officer used unlawful force).

**CONCLUSION**

In sum, I find and conclude that:

(1)  *for Count I*: Defendant is entitled to summary judgment on Plaintiff's First Amendment claim.  I find and conclude that Plaintiff has not sufficiently shown he made any speech, much less speech that is protected by the United States Constitution.  Also, because Defendant has shown reasonable suspicion for the traffic stop and probable cause for Plaintiff's arrest, the law is not clearly established that Plaintiff has alleged a viable claim of retaliatory arrest;

(2) *for Count II:* Defendant Sanchez is entitled to summary judgment on Plaintiff's Fourth Amendment claim.  I find and conclude that Defendant had an objectively reasonable suspicion to justify his initial stop of Plaintiff; and Plaintiff's conduct constituted a basis for arrest with probable cause.  Even assuming that full probable cause did not exist, the Court finds and concludes that a reasonable officer could have believed that probable cause existed to arrest Plaintiff.  Defendant's search of Plaintiff was also justified under the Fourth Amendment as a search incident to arrest, and also reasonably conducted based on officer safety, given the circumstances;

(3*) for Count IV*:  Defendant is entitled to summary judgment on Plaintiff's excessive force.  The Court finds that no reasonable juror would find that the force used by Defendant was not reasonable under the circumstances and undisputed facts;

(4) *for Count V*:  Defendant is entitled to summary judgment on Plaintiff's malicious prosecution claim.  I find and conclude that probable cause existed to arrest Plaintiff.  Also,

because Plaintiff's criminal case was dismissed on procedural grounds, the case was not terminated in his favor for purposes of a malicious prosecution analysis; and finally,

(5) *for Count VI*:  Defendant is entitled to summary judgment on Plaintiff's state law battery claim because Defendant Sanchez used lawful and reasonable force.

**THEREFORE,**

**IT IS ORDERED** that Defendant's Motion for Summary Judgment on the Basis of Qualified Immunity (**Doc. 17**) is hereby GRANTED for reasons described in this Memorandum Opinion and Order.

A Judgment shall be entered contemporaneously with this Memorandum Opinion and Order.

_____
UNITED STATES DISTRICT JUDGE